# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re

**ANDREW R. PUGLIA,**

                   Debtor

Chapter 13
Case No. 04-13438-RS
[NOT FOR PUBLICATION]

## MEMORANDUM OF DECISION ON
## DEBTOR'S OBJECTION TO TRUSTEE'S REPORT AND ACCOUNT

Upon completion by the Debtor of his Chapter 13 plan, the Chapter 13 Trustee, Doreen Solomon, filed her Report and Account, to which the Debtor, Andrew Puglia, has now objected. The Debtor does not dispute the accuracy of the account but states that it reflects disbursement to a creditor of $1,500 that the Trustee should instead have refunded to him. Accordingly, by his objection, the Debtor seeks an order requiring the Trustee to reimburse him for the misdirected payment. The Trustee opposes this request, contending that the monies in question were appropriately distributed to the creditor. The parties having submitted the matter for adjudication on undisputed facts, the Court now enters the following findings and rulings and, on the basis thereof, concludes that the monies were appropriately distributed.

### Facts and Procedural History

On April 23, 2004, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code and a Chapter 13 plan. Under the proposed plan, the Debtor would make plan payments totaling $8,334, including ten monthly payments of $150 and a balloon payment in the eleventh month of $6,834; the balloon payment would be funded by refinancing of the Debtor's principle residence or other borrowings. The plan proposed to pay only two claims: the administrative claim of the Debtor's attorney, Laurel Bretta, in the amount of $1,500, which

would be paid in full; and the $60,000 unsecured claim of the Burlington Housing Authority, which would be paid a ten percent dividend, or $6,000. The balance of the cost of the plan [$8,334 − ($6,000 + $1,500)] would pay the Trustee's fee of $834.

While the plan remained pending, the Debtor filed a "Motion for Authority of Debtor to Borrow Funds to Satisfy Chapter 13 Plan Payments." By this motion, the Debtor sought authority to refinance his home on specified terms. The motion specified how the proceeds of the refinancing would be distributed. The proposed distribution included a distribution to the Chapter 13 Trustee of $7,734 to fund the plan.[1] No objection having been filed, the Court allowed this motion on September 10, 2004 by a simple endorsement order, "Allowed."

On October 29, 2004, the Debtor moved for authority to amend the order of September 10, 2004. By this motion, which recited that the refinancing had already occurred, the Debtor sought authority to borrow $10,000 more than had been authorized by the earlier order. As did the earlier motion, this motion set forth a proposed distribution of the proceeds of the refinancing. This time, the proposed distribution included a distribution to the Chapter 13 Trustee of $7,584 to fund the plan and, in a new item, "Legal fees–held pending Fee Application" of $1,500. The motion did not further elaborate on the legal fees; it did not specify to whom they would be paid or that such distribution would be in lieu of the distribution required by the plan.[2] No objection having been filed, the Court allowed the motion to amend on

---

[1] A footnote on the figure of $7,734 explained: "This amount assumes the Debtor to have paid four (4) plan payments of one hundred fifty ($150.00) dollars each to the Chapter 13 Trustee."

[2] Nor did it indicate when a fee application would be filed. None was ever filed in this case, despite the requirements of the local rule requiring a fee application where, as was apparently the case here, counsel's total fee exceeds $2,500. See MLBR Appendix 1, Rule 13-7(b). Ms. Bretta's Statement Pursuant to Rule 2016(b), filed with the petition, states that total agreed compensation was $3,000, including $1,500 paid prepetition and another $1,500 to be

2

November 30, 2004 by another endorsement order: "Allowed: the borrowing order is deemed amended as requested."

On January 18, 2005, the Court entered an order confirming the Chapter 13 plan, but this confirmation order incorrectly stated the amount of the lump sum payment that would be required by the plan. Therefore, on March 15, 2005, the Court entered a Corrected Order Confirming Chapter 13 Plan.[3] In both instances, the original order and the corrected, the Court entered, without modification, orders that had first been submitted by the Trustee as proposed orders. Before they were entered as orders by the Court, both had first been served on the Debtor and his counsel (as attested by certificates of service attached to each), and no objection had been filed as to either.

As corrected, the confirmation order specified that the Debtor was to make payments totaling $8,334, including monthly payments of $150 per month and, in the eleventh month, a lump sum payment of $6,834 to pay off the plan. It further stated that "[t]he disbursements to be made by the Chapter 13 Trustee pursuant to the confirmed plan are set forth on the attached summary which is incorporated by reference." The attached "Summary of Disbursements to be Made Under the Plan" listed the administrative claim of Debtor's counsel, Laurel Bretta, for legal fees in the amount of $1,500. It also stated that "[t]he holders of unsecured claims total [sic] $60,000.00 shall receive a dividend of no less than 10%." A note added that $60,000 is the amount of the civil claim of the Burlington Housing Authority.

By a combination of monthly payments and a lump sum payment (on October 26, 2004)

---

paid postpetition.

[3] The amount of the lump sum payment is the only respect in which the corrected confirmation order differed from the original.

3

in the amount of $7,584 from the proceeds of the refinancing, the Debtor paid the Trustee a total of $8,484.00 ($150 more than the plan required). In addition, from other proceeds of the refinancing, the Debtor paid his attorney, Ms. Bretta, the balance due her of $1,500.00. He made this payment directly to Ms. Bretta, not through the Chapter 13 Trustee. Therefore, with the check for the lump sum payment, Debtor's counsel, Ms. Bretta, sent the Trustee a letter in which she stated: "As our fees have been satisfied, kindly refund the one thousand five hundred ($1,500.00) dollars listed on the Debtor's Chapter 13 plan to the Debtor."[4]

Despite this request, on or around February 7, 2005, the Trustee sent a check to Ms. Bretta in the amount of $1,000 as a distribution in partial satisfaction of the amount due her under the Debtor's plan. On February 14, 2005, Ms. Bretta returned the check to the Trustee with another letter, stating (without elaboration): "My understanding is that this sum should be refunded to the Debtor. No fees are due this office in this case."

Though the Debtor had paid Ms. Bretta in full by October 26, 2004, he never moved to amend his plan to eliminate the $1,500 payment to Ms. Bretta from the plan and to reduce the amount needed to fund the plan. Nor did he object to either of the proposed confirmation orders submitted by the Trustee, both of which continued to expressly require distributions Ms. Bretta. The original was submitted and served on November 18, 2004, the corrected on February 24, 2005, in both instances well after Ms. Bretta had first asked the Trustee to refund $1,500 to the Debtor.

---

[4] Notably, the letter did not elaborate in any way on this request. For example, it did not state how the firm's fee had been satisfied and, if by payment, did not state who had made the payment and in what amount. In an affidavit he submitted in support of the present objection, the Debtor states that, in her letter of October 26, 2004, Ms. Bretta informed the Trustee that "the legal fees due had been fully paid by me." This is inaccurate. The letter stated that the fee had been "satisfied," not "paid," and it did not specify how or by whom.

4

As the Trustee's Report and Account reflects, the Trustee distributed the $8,484.00 in total plan contributions to three entities as follows: $7,500.60 to the Burlington Housing Authority, representing a dividend of 12.5 percent on its $60,000 unsecured claim; $833.40 to herself, in payment of her fee; and $150 to the Debtor, being a refund of the amount by which his payments exceeded those required by the confirmed plan. After Ms. Bretta returned her check for $1,000, the Trustee distributed nothing further to her. Instead the Trustee distributed the $1,500 that would have gone to Ms. Bretta to the Burlington Housing Authority, increasing its distribution from $6,000.00, the ten percent minimum required by the plan, to $7,500.60.

The Trustee filed her Report and Account on May 20, 2005, and the Debtor responded with the present objection, filed *pro se*, and his own affidavit filed in support of the objection. The objection asks the Court to order the Trustee to refund to him the amount of $1,500.60. The Trustee filed a response to the motion, and the Debtor responded with a Supplemental Response (this filed by Ms. Bretta on the Debtor's behalf).[5] The Court held a nonevidentiary hearing on the matter and took the matter under advisement. Neither the Debtor nor the Trustee requested an evidentiary hearing or indicated that any material fact was in dispute.

**Positions of the Parties**

The Debtor takes the position that, by distributing to the unsecured creditor a dividend in excess of the minimum ten percent mandated by the plan, the Trustee violated the terms of the confirmed plan. He makes two arguments in support of this position.

The first is based on the language of the confirmation order. He acknowledges that the

---

[5] In the Supplemental Response, the Debtor asks "that the amount in dispute, specifically, one thousand ($1,000.00) dollars be returned to him." Despite this inconsistency, I view the amount in controversy as the full $1,500.60 requested by the Debtor in his Objection.

5

confirmation order does not state that unsecured creditors shall receive ten percent, but that they shall receive "*no less than* 10%." Nonetheless, he maintains, the confirmation order also contains no language that could be construed as authorizing the Trustee to pay the unsecured creditor a dividend in excess of ten percent. Absent such authorization, he contends, funds in excess of those needed to pay the mandated percentage on allowed claims should have been refunded to the Debtor.

The Debtor's second argument is based on the source of the funds used to fund the payment of Ms. Bretta's fee. The monies that funded this payment were derived not from disposable income that had been committed to the plan but from an exempt asset, specifically, the equity in his home. Because the funds were exempt, the Trustee had no right to distribute them to the unsecured creditor. He maintains that, by distributing the $1,500 originally intended for Ms. Bretta to the unsecured creditor instead of to the Debtor himself, the Trustee (in essence) appropriated the exempt funds that he'd paid to Ms. Bretta for payment to unsecured creditors. He points out that had Ms. Bretta simply been paid through the plan, the proceeds from the sale of the home would have gone directly to the Debtor and his wife, and the Trustee would have had no right to appropriate them for unsecured creditors.

In addition, the Debtor contends (in what is more a frustration than an argument) that this entire episode could easily have been avoided had the Trustee responded to Ms. Bretta's early and original request to refund her share of the plan distribution to the Debtor.

The Trustee maintains that she distributed the funds as the confirmation order required. Her position is based on the language of the confirmation order. Under that language, she contends, the Debtor is obligated to pay a sum certain to fund the plan, and the Trustee is obligated to distribute this amount to creditors, up to the full amount of their claims. If, after

confirmation of the plan, a claim is withdrawn or disallowed or allowed in a lesser amount than that on which the plan was predicated, the Trustee remains obligated to distribute to creditors the full amount of the required contribution (until unsecured claims are paid in full). The plan is thus (in the vernacular) a "pot plan," one based on a defined contribution, not a defined dividend. The standard confirmation order used in this District (and which was used in this case) is so designed in order to conform to the requirement in § 1325(b)(1)(B) that, unless unsecured claims are paid in full, the plan must provide for distribution of all projected disposable income to be received in the three years after the first plan payment. See 11 U.S.C. § 1325(b)(1)(B). It is for this reason, the Trustee points out, that the standard form of confirmation order does not state that unsecured creditors shall receive a certain percentage—for example, precisely ten percent—but "no less than" a certain percentage. The Trustee maintains that she was obligated to abide by the confirmation order.

## Discussion

The Trustee is bound to execute the plan as confirmed. Accordingly, the proper focus here is on the language of the plan and especially of the order confirming it. The Trustee has accurately construed the confirmation order. The order used in this case is the standard form of confirmation order used in this district. It requires that the Debtor contribute a sum certain: "The Debtor shall pay to the Chapter 13 Trustee" ten monthly payments of $150 and a balloon payment in the eleventh month of $6,834. It also requires the Trustee to make disbursements to creditors as set forth on the appended "Summary of Disbursements to be Made Under the Plan," which, in relevant part, specifies that "the holders of unsecured claims . . . shall receive a dividend *no less than* 10%." This language sets a floor but no ceiling: unsecured creditors shall

receive at least ten percent but may receive more. The language does not limit unsecured creditors to ten percent. The plan contains no language entitling the Debtor to a refund of required plan contributions that would otherwise serve only to fund dividends in excess of ten percent.[6]

The form of order is so designed, as the Trustee contends, to conform to the requirement in § 1325(b)(1)(B) that, unless unsecured claims are paid in full, the plan must provide for distribution of all projected disposable income to be received in the three years after the first plan payment. See 11 U.S.C. § 1325(b)(1)(B). Here, the Debtor contends that the excess funds that were distributed to unsecured creditors in this case were not funded from disposable income—he contends he had no disposable income[7]—but from an exempt asset, his home, which he had no obligation to contribute to the plan. This argument is irrelevant. Whether the Debtor was obligated to fund a plan with exempt assets or not, the fact remains that he did propose a plan to be funded with exempt assets, and the Court confirmed that plan. It is irrelevant that the plan and confirmation order might have been different than they were. The Trustee was obligated to administer the given plan as confirmed.

But here the Debtor is not really arguing that he should have been permitted to contribute less to the plan than the confirmation order required. His real point is that, having paid $1,500 of the required contribution directly instead of through the Trustee, he should have been given plan credit for the amount paid directly. Had he been given this credit, he argues, he would have been

---

[6] See *In re Martin*, 232 B.R. 29, 32-35 (Bankr.D.Mass. 1999) (construing Massachusetts confirmation order as creating pot plan, obligating debtor to make payments in accordance with the plan so long as there remain creditors who have not been paid in full); *In re Barbosa*, 236 B.R. 540, 548-549 (Bankr.D.Mass.1999) (same); *In re Stamm*, 265 B.R. 10 (Bankr.D.Mass. 2001) (same).

[7] I have no evidence on that issue but accept it as true for purposes of argument.

entitled to a refund of the amount paid directly, not because it funded a distribution to unsecured creditors in excess of ten percent, but because it was in excess of the required contribution. The Trustee should have refunded the $1,500 to him just as she refunded the $150 excess contribution he had made.

The problem with this argument is that, unless otherwise provided in the plan or confirmation order, disbursements under a plan must be made by and through the Chapter 13 Trustee. 11 U.S.C. § 1326(c) (*"Except as otherwise provided in the plan or in the order confirming the plan*, the trustee shall make payments to creditors under the plan." (emphasis added)). Direct payments are the exception and not the rule—in no small part because they complicate the Trustee's task of verifying and accounting for plan contributions and disbursements—and in each instance require express authorization from the court. The Chapter 13 plan made no mention of or provision for direct payment of any claim; nor did the original and corrected orders confirming the plan.

The payment in question was mentioned only in the Debtor's Motion to Amend Order Authorizing Debtor to Borrow Funds. That motion clearly sought to increase the amount the Debtor was permitted to borrow, and this appeared to be the only point of the motion. The motion did not request authority to make direct payment of a plan obligation; nor did it propose to modify the then-pending plan to provide for direct payment of the counsel's fee that the plan proposed to pay.

Nor could it clearly have been construed as implicitly proposing direct payment of a plan obligation. First, on the matter of payment of counsel fees, the motion can at best be characterized as cryptic: it proposed that the proceeds of the refinancing would by used to pay "Legal fees–held pending Fee Application" of $1,500. The motion said nothing more on the

9

issue. Notably, it did not specify that the fees in question were the same as those the plan proposed to pay; it did not specify the attorney or firm to whom the fee was to be paid; if the fees were Ms. Bretta's for services rendered in conjunction with the bankruptcy case, and it did not indicate whether the fees in question were the same as those that the plan proposed to pay or fees in addition to those that the plan proposed to pay. The motion thus lacked sufficient detail to be deemed even an implicit request to authorize direct payment of a plan obligation.

Second, the very same motion proposed to pay to the Trustee, from the proceeds of the refinancing, the *full* balance due under the plan. It did not propose to pay the Trustee the balance less the $1,500 to be paid directly to Ms. Bretta. Thus the motion gave affirmative cause *not* to construe the proposed payment to counsel as direct payment of a plan obligation: if the Debtor were proposing to pay a $1,500 plan obligation directly, one would expect him also to pay the Trustee $1,500 less than the plan would otherwise require. For these reasons, this motion cannot be deemed to have requested authorization to pay a plan obligation directly; and the order allowing this motion cannot be deemed an order authorizing direct payment of a plan obligation.

Therefore, neither the plan nor the confirmation orders nor the order allowing the Debtor's Motion to Amend Order Authorizing Debtor to Borrow Funds provided authority to make direct payment of a plan obligation. Absent such authorization, all plan payments were payable through the Trustee. The Trustee was therefore obligated to disburse the full amount that the Debtor was obligated to contribute to the plan; and she had no cause to recognize the direct payment of counsel's fee as a plan contribution.

Insofar as the Debtor suggests that the result should be different because the Trustee could have obviated this trouble by responding to Ms. Bretta's early and original request to refund her share of the plan distribution to the Debtor, I reject his suggestion. The Trustee could

perhaps have avoided this trouble by a timely phone call notifying Debtor's counsel that, absent a modification of the plan, the funds would have to be distributed to the full extent of the required contributions. But the Debtor, too, could have obviated the difficulty on any number of occasions.[8] In fact, by twice circulating proposed confirmation orders to the Debtor and his counsel, the Trustee *did* afford the Debtor two opportunities to clarify his position, but the Debtor availed himself of neither. I find no cause here to alter the result.

Accordingly, the Court will enter a separate order approving the Trustee's account, overruling the Debtor's objection thereto, and discharging the Trustee.

Date: *March 28, 2006*

*Robert Somma*
———————————————
Robert Somma
United States Bankruptcy Judge

cc: Laurel Bretta, Esq., for Debtor
　　Doreen Solomon, Esq., Chapter 13 Trustee
　　Mr. Andrew R. Puglia, Debtor

---

[8] He could have provided for direct payment in the plan. He could (at any time before the distribution was made) have moved to amend or modify the plan to so provide. He could have objected to the proposed confirmation orders. When his counsel received payment from the Trustee, he could have called the Trustee to ascertain her position on the matter instead of relying on a simple note saying, "My understanding is that this sum should be refunded to the Debtor." He could have filed a motion for return of the $1,500 "overpayment."

11